Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| LA SUCESIÓN DE FRANK KOLODZIEJ REPRESENTADA POR ELIZABETH EUNICE KOLODZIEJ ZAYAS Y ELAINE FRANCES KOLODZIEJ SILVA<br><br>*Apelantes*<br><br>v.<br><br>JUAN CARLOS KOLODZIEJ MEJÍAS (INCAPAZ), REPRESENTADO EN ESTE ACTO POR SU TUTORA LEGAL SONIA MEJÍAS JAVARIZ<br><br>*Apelado* | KLAN202400915 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024RF00384 (901)<br><br>Sobre: Autorización Judicial y Nombramiento de Ejecutor Universal |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de enero de 2025.

Comparecen las hermanas Elaine Frances Kolodziej Silva y Elizabeth Eunice Kolodziej Zayas (las apelantes) en representación de la sucesión de su padre, el Dr. Frank Kolodziej Castro (Dr. Kolodziej Castro), y nos solicitan la revocación de la *Sentencia* dictada el 23 de agosto de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario)[1]. Mediante el referido dictamen, el TPI declaró *Ha Lugar* una *Petición* instada con el fin de designar un ejecutor universal al caudal de la referida sucesión.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

---

[1] Notificada y archivada en autos el 26 de agosto de 2024.

Número Identificador

SEN2025_____

**I.**

El 14 de marzo de 2024, las apelantes presentaron una *Petición* en representación de la Sucesión del Dr. Kolodziej Castro, la cual está compuesta por su cónyuge supérstite y sus seis (6) hijas e hijos, a saber: 1) Elizabeth Zayas Ortiz; 2) Elaine Frances Kolodziej Silva; 3) Juan Carlos Kolodziej Mejías; 4) Frank Kolodziej Zayas; 5) Katya Darice Kolodziej Zayas; 6) Elizabeth Eunice Kolodziej Zayas; y 7) Stefanie Marie Kolodziej Zayas.

En su petitorio, relataron que su padre falleció testado el 12 de enero de 2023, pero que, a pesar de ello, los albaceas designados en su *Testamento Común Abierto*[2] renunciaron a dicha designación, dejando el caudal hereditario desprovisto de administración. A su vez, expusieron que el caudal se caracterizaba por su complejidad, al estar compuesto por múltiples deudas y varios bienes inmuebles en desuso.

Por tal razón, argumentaron la necesidad de nombrar un ejecutor universal que diese comienzo a todas las gestiones pertinentes a la administración del caudal, tales como: el inventario de bienes, radicación de planillas del caudal relicto, la satisfacción de las cargas que gravan varios de los inmuebles del caudal; en fin, todo lo necesario para la elaboración del cuaderno particional para proceder con la distribución de la herencia.

En vista a ello, las apelantes señalaron que seleccionaron al Contador Público Autorizado Arturo Avilés Hernández (CPA Avilés Hernández) como ejecutor universal y que dicho nombramiento contaba con la anuencia de seis (6) de los siete (7) herederos. A su vez, informaron al TPI que intentaron infructuosamente de negociar extrajudicialmente con el hermano disidente, el señor Juan Carlos Kolodziej Mejías (señor Kolodziej Mejías o apelado), quien comparece

---

[2] Apéndice del recurso de Apelación, págs. 42-51.

al pleito representado por su tutora legal, su señora madre Sonia Mejías Javariz.

Finalizaron suplicándole al foro primario que nombrara al CPA Avilés Hernández como ejecutor universal, concediendo a éste las facultades que le confiere la ley y toda otra facultad concedida al albacea en el testamento otorgado por el causante.

Luego de varios trámites procesales, el señor Kolodziej Mejías presentó su propio candidato a ejecutor universal, el Lcdo. Reynaldo Quiñones Márquez (Lcdo. Quiñones Márquez)[3]. Ante la discrepancia, el TPI celebró una vista el 2 de agosto de 2024, en la cual desfilaron los testimonios de ambos ejecutores propuestos, con el fin de facilitarle al foro primario la evaluación de su capacidad y experiencia, para que hiciera el correspondiente nombramiento judicial.

En su *Sentencia* del 23 de agosto de 2024, el TPI anunció la selección del Lcdo. Quiñones Márquez como ejecutor universal de la Sucesión del Dr. Kolodziej Castro. Para fundamentar su nombramiento, el TPI expresó que la designación fue hecha luego de haber "evaluado la experiencia de ambos candidatos en consideración a la magnitud y complejidad del caudal, así como el potencial de que se desarrollen controversias entre los herederos, lo que requeriría una mayor y más delicada intervención del ejecutor universal"[4].

El TPI, además, incluyó una nota al calce donde expresó que las apelantes levantaron en la vista una preocupación sobre su capacidad de satisfacer los honorarios del Lcdo. Quiñones Márquez pues estos eran mayores a los honorarios del candidato que propusieron, entiéndase, el CPA Avilés Hernández. Ante esto, el foro primario respondió que "[s]i bien el Tribunal puede entender que el

---

[3] Apéndice del recurso de Apelación, págs. 128-162.
[4] Apéndice del recurso de Apelación, págs. 3.

aspecto económico es una consideración importante, deben tener en mente que hay diversas formas de satisfacer los honorarios del ejecutor universal, habida cuenta de que existen bienes muebles e inmuebles en el caudal y la retribución del ejecutor es una carga hereditaria" [5].

En desacuerdo con la determinación del TPI, las apelantes presentaron una *Moción Solicitando Determinaciones de Hecho Conclusiones de Derecho y Reconsideración* la cual fue declarada *No Ha Lugar* mediante *Orden* del 13 de septiembre de 2024. Aun insatisfechas, las apelantes recurren ante este foro y levantan los siguientes señalamientos de error:

<u>PRIMER ERROR</u>:

Erró el T.P.I. al emitir Sentencia designando al Lcdo. Reynaldo Quiñonez Márquez, ejecutor universal de la Sucesión de Frank Kolodziej, al concluir erróneamente que la magnitud y complejidad del caudal, así como el potencial de que se desarrollen controversias entre los herederos, requeriría una mayor y más delicada intervención del ejecutor universal a ser resuelta por la experiencia.

<u>SEGUNDO ERROR</u>:

Erró el T.P.I. al dictar Sentencia designando al Lcdo. Reynaldo Quiñonez Márquez, ejecutor universal de la Sucesión de Frank Kolodziej, por haber abusado de su discreción judicial y cometer error manifiesto en la apreciación de la prueba a pesar de haber reconocido el mismo Tribunal que ambos candidatos estaban altamente cualificados, contraria a la prueba vertida, designó al candidato con los honorarios más costosos, con un caudal abatido en deudas, demostrando error manifiesto, pues la determinación se distancia de la realidad fáctica.

**II.**

**-A-**

Nuestro Código Civil define en el Artículo 1728 la figura del ejecutor como "la persona natural o jurídica encargada de realizar actos en beneficio de la herencia o de hacer la partición"[6], mientras que el Artículo 1729 de la susodicha pieza legislativa establece de manera somera el requisito que una persona, natural o jurídica,

---

[5] *Íd.*
[6] 31 LPRA sec. 11491.

debe cumplir para lograr ser nombrado ejecutor, a saber, *tener capacidad plena para obligarse*[7].

Bajo el nuevo ordenamiento, las distintas clases de ejecutores se definen y regulan según sus funciones y poderes. En atención a ello, el Código divide los ejecutores en las siguientes tres figuras: el albacea, el administrador y el contador partidor[8].

Primeramente, "[e]l albacea es la persona designada expresamente por el testador para ejecutar o vigilar la ejecución de su última voluntad"[9]. Por otro lado, "[e]l administrador de la herencia es la persona designada para que adopte todas las medidas dirigidas a conservar el patrimonio hereditario y aumentarlo, en lo posible, hasta que pueda distribuirse entre las personas que tienen derecho a recibirlo"[10]. Finalmente, "[e]l contador partidor es la persona designada para realizar la liquidación, la división y la adjudicación de los bienes hereditarios"[11].

A tales efectos, cuando a un ejecutor se le designa las encomiendas y facultades correspondientes a las tres figuras previamente mencionadas, se le conoce como un *ejecutor universal*[12].

**-B-**

Es norma reiterada que los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos de los tribunales de primera instancia[13]. Esta deferencia hacia el foro primario responde al hecho de que el juez sentenciador es quien tiene la oportunidad

---

[7] 31 LPRA sec. 11492 (énfasis nuestro).
[8] 31 LPRA sec. 11511, 11521, 11531.
[9] 31 LPRA sec. 11511.
[10] 31 LPRA sec. 11521.
[11] 31 LPRA sec. 11531.
[12] 31 LPRA sec. 11495.
[13] *E.L.A. v. S.L.G. Negrón-Rodríguez*, 184 DPR 464, 486 (2012); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

de recibir y apreciar toda la prueba oral presentada, de escuchar la declaración de los testigos y evaluar su *demeanor* y confiabilidad[14].

En consideración a lo anterior, los tribunales apelativos deben brindarle gran deferencia al juzgador de los hechos, pues éste se encuentra en mejor posición para evaluar la credibilidad de un testigo y los conflictos de prueba deben ser resueltos por el foro primario[15].

Ahora bien, la doctrina de deferencia judicial no es de carácter absoluto, pues debe ceder ante las posibles injusticias que puedan acarrear unas determinaciones de hechos que no estén sustentadas por la prueba desfilada ante el foro primario. En atención a lo anterior, aunque el arbitrio del juzgador de los hechos es respetable y merece deferencia, no es absoluto y una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal[16].

Si un análisis integral de la prueba refleja que las conclusiones del tribunal *a quo* están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, nos corresponde colegir que éste ha cometido un error manifiesto[17]. Por lo tanto, en vista de dicha función revisora, este Tribunal —por vía de excepción— puede intervenir con la apreciación de la prueba que ha hecho el foro de instancia cuando existe error manifiesto, prejuicio, parcialidad o pasión por parte del juzgador de los hechos[18].

En conclusión, como regla general, la intervención de un foro apelativo con la evaluación de la prueba *testifical* únicamente

---

[14] *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009); *López v. Dr. Cañizares*, 163 DPR 119, 135 (2004).
[15] *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345 (2009); *Ramírez Ferrer v. Conagra Foods P.R.,* 175 DPR 799 (2009).
[16] *Méndez de Rodríguez v. Morales Medina*, 142 DPR 26 (1996).
[17] *Íd.* Véase también, *S.L.G. Rivera Carrasquillo v. A.A.A., supra*; *Ramírez Ferrer v. Conagra Foods P.R., supra.*
[18] *Rolón García v. Charlie Car Rental, Inc.,* 148 DPR 420 (1999); *López Vicil v. I.T.T. Intermedia, Inc.,* 142 DPR 857 (1997); *Pueblo v. Collado Justiniano,* 140 DPR 107 (1996).

procede en casos en que un análisis integral de dicha prueba pueda causar en el ánimo del foro apelativo una insatisfacción o intranquilidad de conciencia tal que estremezca el sentido básico de justicia[19].

**III.**

Nos corresponde evaluar si el TPI erró en su apreciación de la prueba concerniente a la experiencia y preparación de los candidatos a ejecutor universal, y en su subsiguiente análisis sobre la adecuacidad del nombramiento solicitado. Luego de leer sosegadamente la transcripción de la vista (TPO) del 2 de agosto de 2024, junto con la prueba documental y el resto de los autos, concluimos que la *Sentencia* apelada debe ser confirmada. Veamos.

Por estar estrechamente relacionados, discutiremos en conjunto ambos errores. En esencia, las apelantes arguyen que el TPI abusó de su discreción y cometió error manifiesto en aquilatar la prueba documental y testimonial al designar al Lcdo. Quiñones Márquez ejecutor universal, ya que utilizó como criterio decisivo la experiencia del precitado candidato, fundamentándose en el errado precepto de que la administración del caudal sería una complicada; pues al así hacerlo, no solo ignoró que el único requisito con el que debe cumplir un ejecutor es poseer la capacidad para obligarse, sino que descartó las capacidades, conocimientos y experiencias del CPA Avilés Hernández, junto con la voluntad de los herederos y su preocupación legítima sobre sus honorarios que, a su entender, difícilmente pueden ser satisfechos con un causal abatido en deudas.

Por su parte, el apelado arguyó que las apelantes pretenden que este foro apelativo intervenga con la discreción que posee el TPI sin evidenciar que su determinación haya sido antijurídica.

---

[19] *Pueblo v. Cabán Torre*s, 117 DPR 645 (1986).

Asimismo, añadió que el razonamiento del tribunal de que se pudiesen desarrollar controversias entre los herederos es una preocupación legítima que surge del propio expediente.

Como anticipamos, de una lectura de la transcripción no se desprende que la determinación del TPI haya sido una irracional o parcializada. Primeramente, el foro primario expresó en corte que era evidente la preparación académica y profesional de ambos candidatos[20], hecho que reiteró en su *Sentencia.* Puesto que el foro *a quo* tenía ante sí dos candidatos facultados para realizar las labores requeridas de un ejecutor universal, correctamente recurrió a un factor decisivo para hacer su selección, a saber; la experiencia del Lcdo. Quiñones Márquez por más de 30 años y sobre 60 casos de sucesiones y mediaciones[21].

Recordemos, que la propia apelante reconoció eventuales controversias que resultarían de la administración del caudal[22]. Esta admisión de parte, junto con la prueba vertida en la vista sobre la complejidad del caudal[23], nos demuestra que el prejuzgar que la administración del caudal relicto sería una contenciosa no luce como un análisis liviano que resultase irrazonable, ni demuestra que se le haya dado peso a un hecho inmaterial e irrelevante como aducen las apelantes.

Como bien señalamos en nuestra exposición de derecho sobre la deferencia que este foro apelativo intermedio le debe al foro primario, no vamos a sustituir nuestro criterio por el del TPI en

---

[20] TPO del 2 de agosto de 2024, pág. 70, "La realidad es que la experiencia de ambos candidatos está en récord, están en los documentos y están [en] sus testimonios de hoy. Y no quisiera que se convierta esto en una competencia entre dos profesionales, que no hay duda de que ambos están cualificados para este caso."

[21] TPO del 2 de agosto de 2024, examen directo del Lcdo. Quiñones Márquez, págs. 63-64.

[22] *Moción Sobre "Replica a Moción en Cumplimiento de Orden" y "Moción en Cumplimiento de Orden",* apéndice del recurso de apelación, pág. 170. ("[R]econocemos que este caso, por su naturaleza va a ser uno contencioso, que existen controversias sobre bienes del caudal hereditario").

[23] TPO del 2 de agosto de 2024, interrogatorio directo del tribunal al Lcdo. Quiñones Márquez, págs. 76-77, 79-80.

ausencia de parcialidad o aparente injusticia, cuando fue este último quien tuvo contacto directo con la prueba testifical. Tampoco vamos a intervenir con la estimación sobre la futura naturaleza contenciosa del caso, bajo el mismo precepto de deferencia pues esta inferencia se hace en el contexto, no solo de la apreciación de la prueba, sino del conocimiento que posee el foro primario de las particularidades del caso y de las partes.

En cuanto al factor económico del nombramiento, no podemos colegir con las apelantes en su estimación de que los honorarios del Lcdo. Quiñones Márquez son exorbitantes ni extremadamente onerosos. Nótese que, aunque existe una discrepancia entre los honorarios por hora del Lcdo. Quiñones Márquez y los del CPA Avilés Hernández ($175.00 y $100.00 respectivamente[24]), no todos los servicios ofrecidos por el Lcdo. Quiñones Márquez son a razón de $175.00 la hora ya que ciertos servicios tienen tarifas de: $150.00 (*Senior Auditor*), $55.00 (*Staff Auditor*) y $22.00 (personal administrativo) la hora[25].

Vale destacar que esta discrepancia en precio responde al ya ratificado fundamento de que el presente caudal producirá varias controversias que amerite la intervención de un mediador experimentado. Por último, no procede argumentar que seis (6) de los siete (7) herederos aprobaron el nombramiento del CPA Avilés Hernández, y en consecuencia sus honorarios, ya que, al recurrir al foro judicial, los miembros de una sucesión aceptan sustituir su criterio por el del tribunal.

Finalmente, el señor Kolodziej Mejías nos presenta en su alegato en oposición una solicitud de imposición de honorarios de abogados a las apelantes. Resolvemos que dicha petición es

---

[24] TPO del 2 de agosto de 2024, interrogatorio del tribunal al CPA Avilés Hernández, pág. 51, examen directo al Lcdo. Quiñones Márquez, pág. 61.
[25] TPO del 2 de agosto de 2024, examen directo al Lcdo. Quiñones Márquez, pág. 61; Apéndice del recurso de apelación, carta del Lcdo. Quiñones Márquez dirigida a las abogadas de las apelantes, pág. 130.

improcedente pues en el caso de autos no se han dado las circunstancias que colocan a un tribunal en posición de dictaminar que un litigante ha sido temerario en la tramitación de su caso. Aunque hoy este tribunal confirma la *Sentencia* apelada, las apelantes recurrieron ante nosotros en un ejercicio pleno de sus derechos y nada en el expediente sugiere lo contrario.

**IV.**

Por los fundamentos antes expuestos, ***confirmamos*** la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones